UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| NORMA NINO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:13-CV-318 |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is the motion for partial summary judgment, filed by State Farm Lloyds ("Defendant").[1] Norma Nino ("Plaintiff") filed a response in opposition,[2] Defendant filed a reply,[3] Plaintiff filed a surreply,[4] and Defendant filed a sur-surreply.[5] After considering the motion, responsive filings, record, and relevant authorities, the Court **GRANTS** Defendant's motion.

I. **BACKGROUND**

The following facts are undisputed. On April 9, 2012, Plaintiff filed a claim with State Farm, her property insurance company, for damage resulting from a hailstorm occurring on March 29, 2012.[6] On April 17, 2012, independent adjuster Charles Crump scheduled an inspection of Plaintiff's property on behalf of State Farm ("Crump Inspection").[7] At this initial inspection, on May 1, 2012, Plaintiff advised Mr. Crump of stains in the living room and family

---

[1] Dkt. No. 30 ("Motion").
[2] Dkt. No. 48 ("Response").
[3] Dkt. No. 45 ("Reply").
[4] Dkt. No. 46 ("Surreply").
[5] Dkt. Nos. 49 ("Sur-surreply").
[6] *See* Motion at p. 1, ¶¶ 1-2.
[7] *Id.* at ¶ 3.

room, which he inspected.[8] Additionally, Mr. Crump inspected the roof of the property, noted prior repair to the roof, and found no covered damage to the roof as a result of the 2012 hailstorm.[9] Ultimately, Mr. Crump found minimal damage, totaling $2,311.75 and resulting in no payment to Plaintiff after applying the deductible.[10] Mr. Crump provided Plaintiff with a printed copy of his damage estimate.[11]

After the Crump inspection, Plaintiff employed Bruce Wilson, a public adjuster, to adjust the damages on a contingency fee basis.[12] Mr. Wilson inspected the property, including the roof, and found more significant damage, totaling $31,991.72 and including $10,051.22 in roof repairs.[13]

On January 3, 2013, Defendant received a request for a re-inspection of the home from Plaintiff's counsel.[14] By the same mailing, Defendant received a copy of the Wilson estimate.[15] Responsive to Plaintiff's re-inspection request, Defendant assigned the second inspection to Richard Wallis, who performed the inspection on January 11, 2013 ("Wallis Inspection").[16] During this inspection, Plaintiff advised Mr. Wallis of stains in the master bedroom, in addition to the living and family rooms, but was unsure when the former occurred.[17] Like Mr. Crump, Mr. Wallis inspected the roof of the property, noted previous repairs, and found no covered damage to the roof.[18] Mr. Wallis included the master-bedroom damage in his estimate, which totaled

---

[8] *See* Motion, Exh. 3 ("Crump Declaration") at p. 1.
[9] *Id.* at p. 2.
[10] *See* Motion, Exh. 4 ("Crump Estimate").
[11] *See* Crump Declaration at p. 3.
[12] *See* Motion, Exh. 10 at p. 1 .
[13] *Id.* at p. 12 ("Wilson Estimate").
[14] *See* Motion, Exh. 6.
[15] *Id.*
[16] *See* Motion, Exh. 7 ("Wallis Declaration") at p. 1.
[17] *Id.* at 2.
[18] *Id.* at 1.

$3,540.10 and resulted in a post-deductible payment of $1,209.10 to Plaintiff.[19] Mr. Wallis provided a copy of his estimate, as well as a denial letter, directly to Plaintiff's counsel.[20]

After litigation commenced, both parties retained additional opinions on damage to the property. For her part, Plaintiff hired Peter De la Mora, whose inspection reflects roof damage.[21] State Farm hired Alan Berryhill, whose inspection revealed no roof damage and whose report describes the previous State Farm estimate as "reasonable with respect to damage reasonably attributable to the 2012 storms. . . ."[22]

## II.  SUMMARY-JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] A fact is "material" if its resolution could affect the outcome of the action,[24] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[25] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[26]

In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[27] In this showing, "bald assertions of ultimate fact" are insufficient.[28] Absent a sufficient showing, summary judgment is not warranted, the analysis

---

[19] *See* Motion, Exh. 8 ("Wallis Estimate").
[20] *Id.*; Motion, Exh. 9; Wallis Declaration at p. 2.
[21] *See* Motion, Exh. 11 ("De La Mora Estimate").
[22] *See* Motion, Exh. 12 ("Berryhill Estimate").
[23] FED. R. CIV. P. 56(a).
[24] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[25] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[27] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[28] *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) (citation omitted).

is ended, and the non-movant need not defend the motion.[29] On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[30] If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[31] This demonstration must specifically indicate facts and their significance,[32] and cannot consist solely of "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[33]

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[34] Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[35]

Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[36] Parties may cite to any part of the record, or bring evidence in the motion and response.[37] By either method, parties

---

[29] *See Celotex Corp.*, 477 U.S. at 323.
[30] *See id.* at 323-25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995).
[31] *See id.*
[32] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[33] *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[34] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).
[35] *See id.*
[36] *See* FED. R. CIV. P. 56(e).
[37] *See* FED. R. CIV. P. 56(c).

need not proffer evidence in a form admissible at trial,[38] but must proffer evidence substantively admissible at trial.[39]

Finally, because federal jurisdiction is invoked on the basis of diversity of citizenship,[40] this Court, *Erie*-bound, must adhere to grounds of relief authorized by the state law of Texas.[41] Absent a decision by a state's highest tribunal, the decisions by Texas courts of appeals are controlling "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[42]

## III. INITIAL MATTERS

The Court notes that the parties have failed to comply with the Federal Rules of Civil Procedure with regard to the instant filings. Rule 7(b)(2) of the Federal Rules of Civil Procedure provides that "[t]he rules governing captions and other matters of form in pleadings apply to motions and other papers."[43] Rule 10(b) in turn provides that "[a] party must state its claims or defenses *in numbered paragraphs*, each limited as far as practicable to a single set of circumstances."[44] The parties' filings largely lack numbered paragraphs,[45] hindering the Court's reference to their arguments and evidence. The parties are cautioned that future submissions should consistently number each paragraph to properly comply with the rules.

---

[38] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[39] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").
[40] *See* Dkt. No. 1 at ¶ 5.
[41] *See Exxon Co. U.S.A, Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas*, 889 F.2d 674, 675 (5th Cir. 1989); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[42] *Id*. (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)) (internal quotation marks omitted).
[43] FED. R. CIV. P. 7(b)(2).
[44] FED. R. CIV. P. 10(b) (emphasis added).
[45] *See* Response at pp. 1-19; Motion at pp. 5-15.

Further, the Court notes Plaintiff's response fails to make reference to specific parts of the attached evidentiary materials,[46] despite Plaintiff filing her response *nine times* and the Court previously ordering that Plaintiff re-submit the evidentiary attachments in appropriate format in a manner consistent with the response's reference to those attachments.[47] Again, the Court reiterates that it is the parties' obligation to cite to specific parts of the record for the Court's consideration[48] and emphasizes that Plaintiff's failure to direct the Court to specific portions of the exhibits, particularly given the significant length of each attachment, has hindered the Court's review of the issues presented.

## IV. DISCUSSION

Defendant's motion is confined to summary judgment on Plaintiff's bad-faith claims—her claims for common law breach of the duty of good faith and fair dealing, and for statutory violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act ("DTPA").[49] As a result, the Court first discusses the relevant standard and its similar application to Plaintiff's bad-faith claims.

### A. Texas Bad Faith Law

The Texas Supreme Court has held that a claim only crosses the boundary from breach of contract to bad faith when the former "is accompanied by an independent tort."[50] Under Texas law, the tort of bad faith has two elements: "that the insurer had no reasonable basis for denying

---

[46] *See, e.g.,* Response at p. 14, n. 106 (referencing generally a lengthy report by Peter De la Mora), p. 18, n. 125 (referencing generally State Farm's Claim Handling Guidelines), and n. 128 (referencing generally Mr. Crump's lengthy deposition and Plaintiff's declaration).
[47] *See* Dkt. No. 47.
[48] *See* FED. R. CIV. P. 56(c)(1).
[49] *See* Motion at p. 7.
[50] *See Trans. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994), *superseded on other grounds by statute*, Act of June 2, 2003, 78th Leg. R.S., ch. 204, § 13.02, 2003 Tex. Gen. Laws 887, *as recognized in U-Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118 (Tex. 2012).

or delaying payment of the claim, and that it knew or should have known that fact."[51] In other words, "an insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered."[52] Whether liability was reasonably clear "must be judged by the facts before the insurer at the time the claim was denied."[53]

This standard is applicable to all of the claims upon which Defendant seeks summary judgment. In Texas, the common-law bad faith standard for breach of the duty of good faith and fair dealing is imputed to statutory liability under the DTPA and Texas Insurance Code; both extra-contractual claims share the same predicate for recovery, such that evidentiary insufficiency as to the former is dispositive as to the latter.[54]

### i. Reasonable Investigation

Plaintiff first claims that there is evidence that Defendant did not conduct a reasonable investigation of her claim and, therefore, Defendant unreasonably denied coverage.[55] The Texas Supreme Court has held that an insurer cannot escape bad-faith liability by failing to reasonably investigate a claim so that it can contend that liability was never reasonably clear.[56] At the same time, an insurer does not act in bad faith where a reasonable investigation merely shows "a bona fide dispute about the insurer's liability on the contract."[57] In the context of insurance disputes, evidence does not support an independent tort if it merely shows "the insurer was incorrect about the factual basis for its denial of the claim or about the proper construction of the policy;" nor is

---

[51] *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 63 (Tex. 1997) (internal quotation marks and citation omitted).
[52] *Id.* at 56.
[53] *Viles v. Sec. Nat. Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990).
[54] *See Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied); *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, review denied) (citing *Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922–23 (Tex. 2005) (per curiam)); *Giles*, 950 S.W.2d at 56; *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997).
[55] *See* Response at pp. 12-9.
[56] *Giles*, 950 S.W.2d at 56, n. 5; *see also Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 344 (Tex. 1995) (quoting *Moriel* and noting that indifference to facts or failure to investigate is sufficient to establish the tort of bad faith).
[57] *Moriel*, 879 S.W.2d at 17.

an independent tort supported by "simple disagreement among experts about whether the cause of the loss is covered by the policy."[58]

## The Crump and Wallis Inspections

Plaintiff's main argument is that the investigation of her claim was unreasonable because the Crump and Wallis inspections were inadequate and results-oriented.[59] The touchstone cases on this issue are *State Farm Fire & Cas. Co. v. Simmons*[60] and *State Farm Lloyds v. Nicolau*.[61] In *Simmons*, the Texas Supreme Court held that an insurer breaches its duty of good faith and fair dealing by denying an insured's claim upon a "biased investigation intended to construct a pretextual basis for denial."[62] Similarly, in *Nicolau*, the court held that evidence that an expert's report was not objectively prepared and based on inadequate information and that the insurance carrier was aware of the report's questionable validity supports a bad-faith finding.[63] Collectively, these cases stand for the proposition that an insurance carrier may be liable for breach of the duty of good faith and fair dealing when it knowingly ignores information that would lead a reasonable insurer to conclude that liability is reasonably clear or that there is no reasonable basis to deny the claim.[64]

In *Simmons*, the insureds filed a claim with their insurance carrier after their house was destroyed in a fire.[65] After conducting an investigation, the insurance company denied the claim.[66] In support of their claim that there was legally sufficient evidence to support bad faith on behalf of the insurer, the insureds presented the following evidence: the insurer (1)

---

[58] *Id.* at 18.
[59] *See* Response at pp. 12-7.
[60] *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42 (Tex. 1998).
[61] *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444 (Tex. 1997).
[62] *Simmons*, 963 S.W.2d at 44.
[63] *Nicolau*, 951 S.W.2d at 448.
[64] *See Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 198 (Tex. 1998).
[65] *Simmons*, 963 S.W.2d at 43.
[66] *Id.* at 44.

immediately deemed their claim suspicious without basis, (2) never attempted to locate or contact potential suspects the insureds identified, (3) failed to identify any indicators of insurance fraud, as described by their own adjusters, including any evidence of motive for arson, and (4) failed to comply with investigative processes as described by the insurer's own experts.[67] The court found the evidence legally sufficient to establish the investigation was pretextual and materially deficient.[68]

Similarly, in *Nicolau*, the court found the evidence presented was legally sufficient to call into question an insurer's reliance on an expert's report as the basis for denying a claim.[69] After noticing foundation damages in their home, the insureds hired a foundation repair contractor and two engineers, all of whom concluded that there was a significant leak in the plumbing system likely causing the damages.[70] The insureds subsequently filed a claim and provided the insurance company with their engineers' report.[71] The insurer hired an engineering company for a second opinion, which issued a report concluding the leak did not affect the foundation.[72] The insurance company, relying on their engineering company's report, denied the claim shortly thereafter.[73]

At trial, the insurance company argued that its reliance on an expert report conclusively established that it did not act in bad faith.[74] The insureds, however, presented evidence that (1) the insurer's engineering company performed up to ninety percent of its investigative work for insurance companies, almost never concluded that a leak contributed to foundation movement, and had a general view that plumbing leaks are unlikely to cause foundation damages, and (2)

---

[67] *Id.* at 45-57.
[68] *Id.* at 45.
[69] *Nicolau*, 951 S.W.2d at 450.
[70] *Id.* at 446-7.
[71] *Id.* at 447.
[72] *Id.*
[73] *Id.*
[74] *Id.* at 448.

the insurer was aware of this general view and practice.[75] Additionally, there was abundant expert testimony noting the report was based on inadequate testing and information.[76] The court held that while a bona fide dispute among experts does not demonstrate bad faith, "an insurer's reliance upon an expert's report, standing alone, will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable."[77]

> Shortly after issuing both opinions, the court clarified:
>
> Our use of the term "pretextual" in *Nicolau* and *Simmons* did not mean that an insured is relieved from its burden of offering evidence that liability had become reasonably clear or that there was no reasonable basis for denying the claim. We did not redefine the common-law tort of bad faith . . . to include a mechanism by which a factfinder could conclude that the denial was pretextual even though there was a reasonable basis for denying the claim. The use of the concept "pretextual" was another way of saying that there must be some evidence that there was no reasonable basis for denying the claim or that liability was reasonably clear.[78]

Looking at the record in the light most favorable to Plaintiff, the Court will in turn analyze the evidence at hand.

Unlike *Simmons*, Plaintiff has failed to proffer any evidence showing Defendant knowingly and repeatedly ignored evidence presented by Plaintiff. In fact, it is undisputed that Defendant sent more than one adjuster to inspect Plaintiff's property at her request, and that each adjuster inspected the rooms in Plaintiff's home according to her advice. There *is* ample evidence that Mr. Crump and Mr. Wallis, based on their expertise and inspection of the property, determined the property damage was not caused by hail, contrary to the findings by Plaintiff's adjusters. Again, evidence that shows the insurer was incorrect about the factual basis for its

---

[75] *Id.* at 448-9.
[76] *Id.* at 449-50.
[77] *Id.* at 448.
[78] *Castaneda*, 988 S.W.2d at 198.

denial of the claim is not evidence of bad faith, nor does a finding of hail damage by one expert prove another expert's contrary finding was based on an inadequate inspection.

Unlike *Nicolau*, Plaintiff does not provide any expert testimony, proof of standard industry practices, or legal authority that Defendant's adjusters relied on inadequate testing and information. In contrast, Plaintiff attempts to create a genuine issue of material fact as to bad faith by proffering her own unsubstantiated opinion about what adjusters should do when conducting a property inspection and by opining that everything Mr. Crump and Mr. Wallis did was unreasonable—e.g., by alleging without basis that the log notes were "vague" and provided "very little information," by opining that Mr. Crump "failed to make the proper inquiries," by claiming Mr. Crump failed to look into weather reports and old repairs or inspect the full interior of the house "as a reasonable adjuster should," and by claiming Mr. Crump's explanations for what is considered hail/non-hail damage is "confusing" and "unreliable."[79] There is no factual or legal basis to equate Plaintiff's opinion with expert testimony or reasonable industry standards capable of challenging the reliability of an adjuster's work. Indeed, adopting such amorphous position, whereby any plaintiff can impute bad faith to an insurer by opining about the unreasonableness of an adjuster's actions, can only be problematic and result in absurd results.[80]

Plaintiff comes close to proffering some affirmative evidence that Defendant's adjusters conducted an inadequate inspection when she notes Mr. Crump and Mr. Wallis testified their photographs were poor and could have been better,[81] and Mr. Crump failed to follow

---

[79] *See* Response at pp. 5, 14-7.
[80] *See Nicolau*, 951 S.W.2d at 454 (J. Hecht, dissenting) (cautioning against the unintended consequences of *Nicolau*, noting that the case could be read as allowing anyone, *even the insured's own trial lawyer*, to testify that an insurer acted unreasonably, thereby proving bad faith. "As such evidence is not hard to come by—the witness need not be specially qualified, and plaintiff can testify himself if his lawyer is for some reason indisposed—the promise of *Aranda* means no more than that an insurer will never be liable unless a jury finds it liable. This is not much of a promise. It is not very helpful as a rule of law").
[81] *See* Response at p. 17.

Defendant's own policies and guidelines by failing to look into old repairs.[82] As an initial matter, the Court notes that Plaintiff substantially failed to direct the Court to the appropriate evidentiary material in support of her claims. For example, Plaintiff contends Mr. Crump failed to look into old repairs as required by State Farm policies and guidelines; however, she directs the Court to Mr. Crump's deposition as supporting evidence, without pointing to any portion of any policies and guidelines.[83] Similarly, she claims Mr. Wallis testified as to the quality of his photographs, without directing the Court to Mr. Wallis's testimony, let alone specific parts of his deposition.[84] The Court is not responsible for locating the evidentiary support Plaintiff herself did not see fit to adequately present.

When Plaintiff does cite to the correct attachment, she generally cites to what purports to be a "Claim Handling and File Documentation Guidelines" belonging to Defendant.[85] Even reviewing that document *in its entirety*, the Court cannot locate any violation of company policy. First, there is no indication that these are binding procedures on Defendant or its adjusters, but rather company philosophy with respect to claim handling.[86] The document offered by Plaintiff merely notes what Defendant *should* do in order to better serve its "commitment to [its] policyholders"—e.g. what file notes, client correspondence, diagrams, and photographs *should* include, making many of the outlined tasks applicable when "appropriate," "safe," and "practical." There is simply nothing requiring Defendant or its experts to "look into old repairs" when assessing a claim.

---

[82] *Id.* at p. 15; *see also id.* at pp. 19-20.
[83] *Id.* at p. 15, n. 111.
[84] *Id.* at p. 17.
[85] *Id.* at pp. 18, 20; Response, Exh. K.
[86] *See* Response, Exh. K at p. 8.

This leaves the Court with Mr. Crump's and Mr. Wallis's testimony that some of their photographs "should have been better" and were not of the best quality.[87] No reasonable jury could find based on this evidence alone that Defendant's investigation was unreasonable and liability was reasonably clear. Further, unlike *Nicolau*, Plaintiff has failed to present evidence of bias, of the adjusters' predisposition to find non-hail damage in favor of the insurer, of Defendant's purposeful selection of these adjusters because of their general view on hailstorm cases, or that Defendant was aware of the inspection's questionable validity. Thus, there is no factual or legal basis to conclude this evidence amounts to an unreasonable investigation or evidence of bad faith.

### Mr. Crump's Experience and Training

Plaintiff attempts to bolster her argument by arguing Mr. Crump is not an experienced adjuster, since "he only adjusted hail claims on two previous assignments."[88] Nonetheless, Plaintiff does not attach any affirmative proof challenging Mr. Crump's credentials or expertise, or supporting her contention that this amount of experience makes him an "inexperienced" adjuster.[89] In fact, Plaintiff presents evidence that contradicts her position, noting Mr. Crump has handled in excess of 1,200 hail and/or wind claims.[90] More importantly, Plaintiff has failed to provide any evidence supporting her allegation that Defendant was unreasonable in relying on Mr. Crump based on his experience.

---

[87] *See* Response, Exh. H ("Wallis Deposition") at p. 81 and Exh. F ("Crump Deposition") at p. 93.
[88] *See* Response at p. 14.
[89] Plaintiff only points to two pieces of evidence: Crump's deposition testimony and a report prepared by Peter De la Mora, whom Plaintiff hired after litigation commenced, detailing his findings on Plaintiff's property damage. *See* Response at p. 14, n. 106. However, Plaintiff only generally cites to De la Mora's report, failing to articulate how that piece of evidence supports Plaintiff's conclusory arguments. In any event, the Court reiterates that while a conflicting expert opinion may support the inference that Defendant was incorrect in his conclusion, it does not raise a fact issue that Mr. Crump was inexperienced or establish bad faith on Defendant's part. As to Mr. Crump's deposition, the Court finds the testimony does not relate to, let alone support, any of Plaintiff's unsubstantiated assertions. Nowhere in the cited portions of his deposition testimony does Mr. Crump even talk about his credentials, experience, or training. *See* Response at p. 14, n. 106 (citing Crump Deposition at pp. 88-90, 104-107).
[90] *See* Response at p. 4; Crump Declaration at p. 1 (noting Mr. Crump has handled "in excess of 1,200 hail and/or wind claims prior to being assigned to handle claims in McAllen, Texas").

Plaintiff also implies Mr. Crump lacks objectivity since his hail identification experience is limited to Defendant's hail modules before assignments.[91] However, there is no evidence that such training was inadequate, biased, or unreasonable. Even if Mr. Crump was trained by Defendant, this evidence alone does not raise an issue of bad faith. Texas law is clear: evidence that an expert works primarily for insurance companies and an insurer's awareness of an adjuster's particular view, standing alone, does not amount to a bad-faith finding.[92]

### Defendant's Investigatory Scheme

Last but not least, Plaintiff argues that Defendant knowingly "picks and chooses" photographs taken by its adjusters to identify non-hail damage and uses independent adjusters for catastrophes that handle a large volume of cases as an avenue to systemically deny hailstorm claims.[93] Despite this serious accusation, Plaintiff does not direct the Court to *any* evidence in support of her claim.

In sum, Plaintiff has provided noting more than speculative and unsupported challenges to Mr. Crump's expertise and Defendant's investigative practices, coupled with her personal opinion that the inspections were faulty and insufficient. Accordingly, the Court finds no reasonable jury could find that Defendant's investigation was unreasonable and, therefore, that liability was reasonably clear. Looking at the record in the light most favorable to Plaintiff, it is clear that Plaintiff has failed to create a genuine issue of material fact on this point.

  *ii.*  *Misrepresentations*

In yet another conclusory paragraph, Plaintiff argues there is enough evidence to deny Defendant's motion because State Farm made the following misrepresentations: (1) misrepresented that it would provide Plaintiff a final claim determination letter, failing to do so

---

[91] *See* Response at p. 14.
[92] *See Nicolau*, 951 S.W.2d at 449.
[93] *See* Response at p. 14.

until counsel was retained; (2) misrepresented to Plaintiff that her hail and windstorm damages were below her policy deductible; (3) conducted a results-driven investigation; (4) misrepresented to Plaintiff that it had conducted a thorough investigation documented with an accurate report, later admitting its own photographs were poor.[94]

First, Plaintiff points to no evidence—not even her own testimony—that Defendant represented to her that it would provide a final claim determination letter; therefore, there is no evidence of a misrepresentation. As to the second claim, whether or not the hailstorm damages were below Plaintiff's deductible is the central issue of Plaintiff's breach of contract suit. Thus, Plaintiff essentially mischaracterizes her breach of contract claim as evidence of a "misrepresentation," failing to support her argument with any evidence or legal authority. Lastly, as to the third and fourth claims, the Court generally incorporates its previous analysis regarding Defendant's investigation of Plaintiff's claim. The Court reiterates that Plaintiff has failed to provide any evidence or valid explanation supporting her claim that Defendant's investigation was inadequate or results-oriented. The Court further notes Plaintiff has failed to explain how Defendant's report and investigation, even if deficient, amount to a misrepresentation.

### iii. *Public Adjuster's Correspondence*

As further evidence that Defendant handled her claim unreasonably and purposely delayed her claim, Plaintiff then argues that Defendant failed to acknowledge her public adjuster's estimate and letter of representation for three months.[95] Defendant does not dispute that it initially failed to acknowledge these materials; however, it notes the delay was due to Defendant inadvertently mis-categorizing the estimate as outgoing correspondence, an

---

[94] Response at p. 19.
[95] Response at pp. 18-9.

explanation both plausible and supported by documentation attached to its reply.[96] Defendant acknowledged a second copy of the estimate three months later, when it received a request for a re-inspection of the home from Plaintiff's counsel, on January 3, 2013.[97]

Beyond the mere lapse of time, Plaintiff offers no evidence of purposeful delay, nor has she offered any evidence that the delay was intentional. While a delayed response from an insurer may in some instances be evidence of unreasonable or purposeful conduct, there is no such evidence here.

    *iv.    Written Notification*

Plaintiff claims Defendant failed to deny her claim within a reasonable time in violation of Section 542.056 of the Texas Insurance Code because Mr. Crump did not send her "an acceptance or denial letter of coverage."[98] Section 542.056(a) requires an insurer to "notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss."[99] If the insurer rejects the claim, it must state the reasons for the rejection.[100]

Defendant notes that Mr. Crump handed Plaintiff a written estimate upon completion of his inspection, which satisfies the requirement of Section 542.056 because it "explains line-by-line what [Defendant] is paying for," "has information for the homeowner about their claim," and expressly notes no storm-related damage was found on the roof.[101] Plaintiff does not dispute that she received the Crump estimate or a denial letter by Mr. Wallis; rather, she argues the

---

[96] *See* Reply at p. 5; Reply, Exh. 7.
[97] *See* Reply at p. 5; Motion, Exh. 6.
[98] Response at p. 17.
[99] Tex. Ins. Code Ann. § 542.056(a) (West 2005).
[100] Id. § 542.056(c).
[101] Reply at p. 2; *see* Crump Estimate.

Crump estimate is not compliant because it does not discuss coverage, so Mr. Crump was required to send a "follow-up letter" to Plaintiff.[102]

Based on the evidence presented, the Court finds Mr. Crump did not violate Section 542.056, as the estimate is a timely written document presented to Plaintiff that discusses the basis for denial of her claim—e.g., no storm-related damage in parts of the property, total replacement cost value, and no resulting payment after applying the deductible. Plaintiff's contention that Mr. Crump wrongfully failed to send a follow-up letter has no basis in law or fact.

### B. Exemplary Damages

Lastly, Defendant argues that there is no evidence that it committed any knowing violations of the Texas Deceptive Trade Practices Act or Texas Insurance Code and, therefore, is entitled to judgment as a matter of law on any claim for exemplary damages.[103] Plaintiff offers the following as evidence that Defendant acted knowingly:

> **Interior:** Defendant was aware of interior damages, but knowingly failed to inspect Plaintiff's entire home. Defendant knew water had leaked into the interior but failed to determine the cause of such damage. Defendant knowingly took poor pictures of the interior. He admitted that he reviewed the photos when he inserted the descriptions.
>
> **Exterior:** Defendant was aware of repairs made to Plaintiff's roof, but knowingly did not inquire about such repairs and knowingly did not check for further damages. Defendant was aware that there were other markings on Plaintiff's roof, but knowingly disregarded them as unrelated to hail. Defendant knowingly did not acknowledge wind damage to Plaintiff's siding. Defendant was aware that many shingles on Plaintiff's roof were unsealed, but knowingly disregarded the possibility that the shingles had been damaged by wind. Defendant was aware that his notes were poor as to his characterization of "old wind damage."[104]

---

[102] Surreply at p. 2, ¶ 2; *see* Motion, Exh. 9 ("Wallis Letter").
[103] Motion at p. 14; *see Giles*, 950 S.W.2d at 54 (noting that a finding of bad faith does not automatically entitle a plaintiff to exemplary damages; a party seeking punitive damages must prove that "the insurer was actually aware that its action would probably result in extraordinary harm . . . such as death, grievous physical injury, or financial ruin. This relatively stringent standard of proof ensures that punitive damages will ordinarily be available only in exceptional cases").
[104] Response at pp. 21-2.

Once again, Plaintiff's assertions are nothing but conclusory claims, as there is no reference to *any* evidentiary support. In any event, these paragraphs basically re-state Plaintiff's unsupported arguments about the inadequacy of the Crump and Wallis inspections, merely adding more unsubstantiated claims of knowing conduct.

Plaintiff further claims that Defendant knowingly violated its own handling practices guidelines.[105] Nonetheless, Plaintiff merely copy-pasted provisions of the purported guidelines and failed to articulate how this amounts to proof of knowing violations of the Texas Deceptive Trade Practices Act or Texas Insurance Code. As the Court previously noted, there is no evidence of Defendant's failure to follow the guidelines and comply with company policies. Lastly, Plaintiff asserts "Defendant knowingly did not send [her] a claim determination letter, even though Defendant's own policies require such letter" and "Defendant was aware that Plaintiff's public adjuster had sent a letter of representation and knowingly did not respond to such a letter and reopen the claim."[106] Again, Plaintiff does not direct the Court to any evidence supporting her conclusory statements, and in fact, misrepresents to the Court that company policies require a letter of denial.[107]

---

[105] *Id.* at pp. 19-20
[106] Response at p. 22.
[107] *See* Response, Exh. K at p. 13. The Claim Handling and File Documentation Guidelines provide, in relevant part:
> Denials of coverage may be made orally in person *or* by telephone and followed by a detailed letter to the insured . . . There are states and/or provinces where regulations may require the basis for denial . . . of a claim in writing. These jurisdictions may also require a written explanation in situations where no damage is found. *Follow the law in the jurisdiction*.
>
> In jurisdictions where the law does not require written follow up to the denial of the claim, consideration should be given to communicating our position both verbally and in writing . . . (emphasis added).

## V. EVIDENTIARY OBJECTIONS

In her surreply, Plaintiff objects to the introduction of records of Wells Fargo, her mortgage company, because they were produced after the discovery period.[108] In its reply, Defendant introduced the records as evidence that "Plaintiff's roof was declared a total loss as a result of [Hurricane] Dolly, and the Plaintiff's then-insurance company paid her to replace the roof."[109] The Court finds it unnecessary to resolve this objection for purposes of this order, as the Wells Fargo records do not affect the Court's disposition of the partial motion for summary judgment.

## VI. HOLDING

The Court finds Plaintiff has failed to raise a genuine issue of material fact as to her common law and statutory bad-faith claims. Additionally, Plaintiff has presented no evidence that Defendant knowingly violated the Texas Deceptive Trade Practices Act or Texas Insurance Code. In turn, the Court finds that Defendant is entitled to judgment as a matter of law and **GRANTS** Defendant's partial motion for summary judgment. Accordingly, Plaintiff's claims for common law breach of the duty of good faith and fair dealing and for statutory violations of the Texas Insurance Code and DTPA are dismissed with prejudice.

IT IS SO ORDERED.

DONE this 24th day of November, 2014, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[108] Surreply at p. 4.
[109] Reply at p. 4.